# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANS HEITMANN, Individually and on behalf of other similarly situated individual Chicago Police Officers,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CHICAGO,<br><br>Defendant.<br>------------------------------------------------<br><br>THOMAS LINNANE, Individually and on behalf of other similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CHICAGO,<br><br>Defendant. | No. 04 C 3304<br>Consolidated with<br>No. 04 C 5712<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

This is a consolidated representative action brought under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201, *et seq.*, against the City of Chicago by Hans Heitmann on behalf of himself and other similarly situated active and retired non-supervisory officers ("*Heitmann* plaintiffs") of the Chicago Police Department ("CPD"), and Thomas Linnane, on behalf of himself and other similarly situated active and retired members of the CPD with ranks of sergeant,

lieutenant and captain ("*Linnane* plaintiffs").[1] We refer collectively to these CPD personnel as "sworn members" or "plaintiffs." On September 11, 2007, the Court granted partial summary judgment for plaintiffs, solely with respect to their claim for injunctive relief in connection with the practices of the CPD in considering requests by sworn members to use FLSA compensatory time. *Heitmann v. City of Chicago*, Nos. 04 C 3304 & 04 C 5712, 2007 WL 2739559 (N.D. Ill. Sept. 11, 2007) (doc. # 99). Thereafter, on February 21, 2008, this Court issued an Injunction Order to effectuate the judgment entered on liability (doc. # 112), as well as a further Memorandum Opinion and Order explaining the basis for the specific injunctive relief that we ordered (doc. # 110).

Defendant has appealed from the underlying ruling on liability and the injunction order (doc. # 114), which has led to the motion now pending before us: defendant's motion to stay enforcement of the Injunction Order pending appeal (doc. # 120). Plaintiffs oppose the motion, which has been fully briefed. For the reasons set forth below, we deny the motion for stay.

**I.**

Defendant's motion for a stay of the Injunction Order pending appeal is governed by Fed. R. Civ. P. 62(c), which provides that "[w]hile an appeal is pending from an interlocutory or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." In deciding whether to stay an injunction pending appeal, we consider:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

---

[1] The *Heitmann* and *Linnane* cases were consolidated on November 4, 2004 (*Linnane* doc. # 7). Pursuant to consent of all parties in both cases, and pursuant to 28 U.S.C. § 636(c), both cases were assigned to this Court for all proceedings, including the entry of final judgment (*Heitmann* doc. ## 12-14; *Linnane* doc. ## 8-10).

2

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The party seeking a stay has the burden of proving that these factors warrant a stay. *Id.*

The *Hilton* standards that guide consideration of a stay pending appeal generally mirror the factors a trial court considers in deciding whether to issue a preliminary injunction, but with an important exception: "in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet its burden." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997). To satisfy the first *Hilton* factor, defendant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success." *Id.* If defendant makes that showing and a showing of irreparable harm in the absence of a stay, then we consider all four *Hilton* factors using a sliding scale approach. *Id.* at 1300-01. If defendant fails to show the requisite likelihood of success, or irreparable harm, or both, the analysis ends there and the stay must be denied. *Id.* at 1301.

With this framework in mind, we assess defendant's motion for a stay under the *Hilton* test.

### A.

We begin with consideration of defendant's likelihood of success on appeal. We share the sentiment expressed elsewhere that, "[o]bviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place." *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986).

3

We recognize (as does defendant) that while our assessment of what the FLSA requires with respect to considering requests to use compensatory time is in line with the approach adopted by some courts, *Beck v. City of Cleveland*, 390 F.3d 912 (6th Cir. 2004); *DeBraska v. City of Milwaukee*, 131 F. Supp.2d 1032 (E.D. Wis. 2000), other courts have taken a different approach. *Mortensen v. County of Sacremento*, 368 F.3d 1082 (9th Cir. 2004); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298 (5th Cir.), *cert. denied*, 540 U.S. 879 (2003). We have explained in some detail why we believe our assessment is correct, and why we respectfully disagree with the opinions by panels of the Fifth and Ninth Circuits (doc. # 98: Mem. Op. and Order at 19-31).

That said, in the face of conflicting court of appeals precedent on the issue, we cannot say that defendant has failed to demonstrate the requisite likelihood of success. While the showing must be stronger than that required for a preliminary injunction, it does not require defendant to show that it will more likely than not prevail on appeal. *See Harrington v. Heavy*, No. 04 C 5991, 2007 WL 257681, *1 (N.D. Ill. Jan. 23, 2007) ("[t]he likelihood of success on the merits standard requires something less than a 50% chance of success"). Defendant has satisfied the first *Hilton* standard.

## B.

We now consider whether defendant has shown that it will suffer irreparable injury in the absence of a stay. Defendant argues that if required to comply with the Injunction Order, it will suffer the following types of irreparable harm: (1) defendant will have to spend time to develop a new General Order to govern the handling of requests for compensatory time; (2) defendant will incur out of pocket costs in printing and distributing a new General Order and forms for handling requests to use compensatory time; (3) defendant will expend time in training its employees in how to make requests for compensatory time, and in training persons deciding on the requests in how to

4

handle the requests; and (4) the requirement that defendant search for replacements for police personnel seeking to use compensatory time will impose a burden that may impede police operations.

Defendant overstates the burdens that compliance with the Injunction Order will impose. The Injunction Order and accompanying Memorandum Opinion and Order set forth a template which will minimize the difficulty in fashioning any General Order, which would have as its purpose implementing the Injunction Order. In addition, we do not believe that the requirements in the Injunction Order for how requests for compensatory time are to be made, handled or documented are so complex that extensive training will be required.

Nor do we believe that a requirement to seek replacement officers would create an undue burden. While defendant now says that requiring it to seek a replacement officer on as little as 48 hours notice would be burdensome (doc. # 127: Def.'s Reply at 7), defendant earlier acknowledged that a longer notice period was a preference and not a necessity (doc. # 110: Mem. Op. and Order at 4). As we noted in our earlier opinion, defendant has conceded that whether the time period for seeking a replacement is 48 hours or a much longer period, "probably nine and a half times out of ten they're going to get that time (12/11/07 Tr. at 20). Moreover, the 48 hour notice period is used for compensatory time requests by police offices in Milwaukee, Wisconsin, and defendant has offered no evidence that this notice period has proven burdensome there (doc. # 110: Mem. Op. and Order at 4).

We do agree that defendant will incur certain out of pocket costs if required to comply with the Injunction Order. Under the Injunction Order, defendant will need to develop, print and distribute new time due slips for members to use when requesting use of compensatory time. We accept defendant's statement that it would need to copy and distribute at least 20,000 copies of a

new, revised time due slip (doc. # 127: Def.'s Reply at 6). We further accept that defendant would have to copy and distribute copies of a new General Order to nearly 14,000 persons (*Id.*). While defendant does not draw out the point, we surmise that defendant says that this would constitute irreparable harm because, if the injunction were overturned on appeal, these costs could not be recovered.[2]

We expect that the cost of obtaining the 34,000 copies of documents that defendant has said it would need to acquire would be no more than $10,000.00. We question whether expenditure of money to comply with a court order qualifies as irreparable harm. *See American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm"); *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("ordinary compliance costs are typically insufficient to constitute irreparable harm"); *Arizona Contractors Ass'n, Inc. v. Candelaria*, CV07-02496, CV07-02518, 2008 WL 486002, *3 (D. Az. Feb. 19, 2008) (in denying motion for stay under Rule 62(c), court stated that "it is difficult to establish irreparable injury based on prospective monetary damages alone"). In any event, to the extent that an inability later to recover this minimal financial outlay constitutes a showing of irreparable harm, it is a very weak one.

---

2    In its motion, defendant also said that in the absence of a stay it would have to bear the cost of the audits required by the Injunction Order (doc. # 120: Def.'s Mot. at 6). In their memorandum, plaintiffs suggested that any audit could be conducted by defendant's audit and internal control section, thus allowing defendant to avoid incurring out of pocket costs from any audits (doc. # 125: Pls.' Mem. at 4-5). In its reply, defendant does not assert audit costs as a specie of harm it would suffer in the absence of a stay.

## C.

Since plaintiff has made (at best) a weak showing of irreparable harm but a better showing of likelihood of success, we continue on to discuss the final two factors in the *Hilton* analysis. We conclude the remaining factors are either neutral or weigh against issuance of a stay.

### 1.

The issuance of a stay would harm the interests of plaintiffs, who are sworn members who have accumulated compensatory time, but whose ability to use it has been compromised by what the Court has determined to be defendant's failure to comply with the FLSA. The Court has found, based on the summary judgment record, that there are "no consistent criteria or guidelines for watch commanders to use in exercising their discretion" in deciding requests for compensatory time off (doc. # 99: Mem. Op. and Order at 11), leading to different watch commanders taking different approaches that in some instances plainly violate the FLSA (*Id.* at 12).

Defendant suggests that this harm is minimal because plaintiffs "were allowed to use [compensatory time] the majority of the time without difficulty (Def.'s Reply at 9). This argument misses the mark for two reasons.

*First*, and foremost, the right to use compensatory time is an individual and not a group right. To say that a "majority" of requests have been granted under the defendant's current regime is cold comfort to the "minority" (and perhaps substantial minority) of plaintiffs who have had their requests denied improperly – and for whom this would continue to occur if a stay were granted.

*Second*, defendant's argument assumes that days off are entirely fungible, and that the denial of a requested day off is acceptable (even if done in violation of the FLSA), because the plaintiff can always request to use the compensatory time on another day. As we explained in our summary

7

judgment opinion, that assumption is untenable because "people do not ask for time off in a vacuum" (doc. # 99: Mem. Op. and Order at 29). They often ask for time off for a specific (and sometimes compelling) reason. In that event, the ability to get time off later may not be an acceptable substitute for the earlier time off that was denied.

We also find that this harm to plaintiffs from the issuance of a stay outweighs the harm to defendant from the denial of a stay. The expenditure of a modest amount of money and effort to comply with the Injunction Order, in our judgment, does not outweigh the right of plaintiffs to use compensatory time effectively, in the way that the FLSA requires. *See Blum v. Caldwell*, 446 U.S. 1311, 1315-16 (1980) (affirmed appeals court decision denying motion to stay preliminary injunction where State of New York claimed it would spend $150 million to comply with the injunction, reasoning that this cost did not outweigh the individuals' rights to health and medical care).

**2.**

Finally, we consider the question of the public interest. Defendant warns that implementing the requirements of the Injunction Order will injure the public interest by distracting the Chicago Police Department from its mission of serving the public (Def. Motion at 7). For their part, plaintiffs say that granting a stay could harm the public interest because it may result in a less effective police force, stemming from over-worked personnel suffering from poor morale (Pls.' Mem. at 7). We do not find either of these ominous (and unsupported) forecasts convincing. The modest costs and effort that would be required in complying with the Injunction Order will not distract police officers from their work, nor will it impair the police department's ability to do its job. However, there is no evidence that police officers are currently overworked. These arguments fail to tip the public interest balance in favor of either party.

Defendant adds, as a further public interest consideration, that a stay will allow defendant to avoid costs to the taxpayers that will not have to be incurred if the Court's opinion is reversed on appeal (Def.'s Motion at 7). We are aware – and regret – that taxpayers must bear the cost of actions that we find necessary to bring defendant into compliance with the FLSA. However, we take into consideration that the cost to taxpayers is likely no more than $10,000, which when spread among all taxpayers in Chicago is *de minimis*. Moreover, against this cost, we also must consider the public interest in ensuring that defendant is in compliance with federal law, and that the sworn law enforcement personnel charged with the responsibility of protecting the public receive the FLSA rights to which they are entitled. When weighing these considerations, we find that the public interest factor is at the very least neutral, and perhaps tilts slightly in favor of plaintiffs.

## CONCLUSION

For the foregoing reasons, we find that consideration of the four *Hilton* factors weighs against issuance of a stay of our Injunction Order pending appeal. Thus, we deny defendant's motion for a stay pending appeal (doc. # 120).

We have held in abeyance any requirement that defendant comply with the Injunction Order during the pendency of the motion to stay. Now that we have denied that motion, we reset certain deadlines. We now will require defendant to come into compliance with the Injunction Order by June 30, 2008; this time period will afford defendant ample opportunity to seek a stay on appeal if

defendant so chooses. The one-year audit period set forth in Paragraph 10 of the Injunction Order shall run from July 1, 2008 through June 30, 2009. In all other respects, the Injunction Order remains unchanged.

ENTER:

*Sidney I. Schenkier*
SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: April 25, 2008